1  SARAH E. SCHROEDER, Calif. Bar No. 221528
   KENNETH H. ABBE, Calif. Bar No. 172416
2  EVAN ROSE, Calif. Bar No. 253478
   YAN FANG, Calif. Bar No. 279737
3  901 Market Street, Suite 570, San Francisco, CA 94103
   415-848-5100 (T); 415-848-5184 (F); sschroeder@ftc.gov
4  Attorneys for Plaintiff FEDERAL TRADE COMMISSION

5  LISA MADIGAN, Attorney General
   PAUL A. ISAAC, Ill. Bar No. 6300087
6  500 S. Second Street, Springfield, IL 62706
   217-782-4436 (T); 217-782-1097 (F); pisaac@atg.state.il.us
7  Attorney for Plaintiff STATE OF ILLINOIS

8  MIKE DEWINE, Attorney General
   JEFFREY R. LOESER, Ohio Bar No. 0082144
9  30 E. Broad Street, 14th Floor, Columbus, OH 43215
   614-728-1172 (T); 877-650-4712 (F); jeff.loeser@ohioattorneygeneral.gov
10 Attorney for Plaintiff STATE OF OHIO

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ILLINOIS, and STATE OF OHIO, Plaintiffs, v. ONE TECHNOLOGIES, LP, a limited partnership, also d/b/a SCORESENSE, ONE TECHNOLOGIES, INC., and MYCREDITHEALTH, ONE TECHNOLOGIES MANAGEMENT, LLC, a limited liability company, individually and as general partner of ONE TECHNOLOGIES, LP, and ONE TECHNOLOGIES CAPITAL, LLP, a limited liability partnership, individually and as a limited partner of ONE TECHNOLOGIES, LP, Defendants. | CASE NO. **COMPLAINT FOR PERMANENT INJUNCTION & OTHER EQUITABLE RELIEF** |

Plaintiffs, the Federal Trade Commission ("FTC"), the State of Illinois, and the State of Ohio, for their Complaint allege:

1.    The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten

COMPLAINT                                                          Page 1 of 16

monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of Section 4 of ROSCA, 15 U.S.C. § 8403.

2.     The State of Illinois brings this action under Section 7(a) of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"), 815 ILCS § 505/7(a), and Section 6 of ROSCA, 15 U.S.C. § 8405, to obtain a preliminary and permanent injunction against Defendants for engaging in deceptive acts or practices in violation of the Illinois Consumer Fraud Act, 815 ILCS §§ 505/1 *et seq.*, and in violation of Section 4 of ROSCA, 15 U.S.C. § 8403.

3.     The State of Ohio brings this action under the Ohio Consumer Sales Practices Act, Chapter 1345 of the Ohio Revised Code, O.R.C. §§ 1345.01 *et seq.*, and Section 6 of ROSCA, 15 U.S.C. § 8405, to obtain a preliminary and permanent injunction and restitution against Defendants for engaging in deceptive acts or practices in violation of the Ohio Consumer Sales Practices Act, O.R.C. §§ 1345.01 *et seq.*, and in violation of Section 4 of ROSCA, 15 U.S.C. § 8403.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

4.     This Court has subject matter jurisdiction over the FTC's claims pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345; 15 U.S.C. §§ 45(a), 53(b), and 57b; and Section 5(a) of ROSCA, 15 U.S.C. § 8404(a).

5.     This Court has subject matter jurisdiction over the claims of Plaintiffs State of Illinois and State of Ohio pursuant to Section 6(a) of ROSCA, 15 U.S.C. § 8405(a), as well as supplemental jurisdiction over their claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2) and (b)(3), and 15 U.S.C. § 53(b).

7.     Assignment to the San Francisco Division is proper because thousands of consumers who transacted business with Defendants reside in San Francisco County.

## PLAINTIFFS

8.     The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41–58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which

prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces ROSCA, 15 U.S.C. §§ 8401 *et seq*., which prohibits certain methods of negative option marketing on the Internet.

9.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and ROSCA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57b, and 8404.

10.      Plaintiff State of Illinois is one of the fifty sovereign states of the United States.  Lisa Madigan is the duly elected and qualified Attorney General acting for Plaintiff State of Illinois, and brings this action for and on behalf of the People of the State of Illinois, pursuant to the provisions of the Illinois Consumer Fraud Act, 815 ILCS §§ 505/1 *et seq.*, Section 6 of ROSCA, 15 U.S.C. § 8405, and her common law authority as Attorney General to represent the People of the State of Illinois.

11.      Plaintiff State of Ohio is one of the fifty sovereign states of the United States.  Mike DeWine is the duly elected and qualified Attorney General acting for Plaintiff State of Ohio, and brings this action for and on behalf of the People of the State of Ohio, pursuant to the Ohio Consumer Sales Practices Act, O.R.C. §§ 1345.01 *et seq.*, and Section 6 of ROSCA, 15 U.S.C. § 8405.

**<u>DEFENDANTS</u>**

12.      Defendant One Technologies, LP is a Delaware limited partnership with its principal place of business at 8144 Walnut Hill Lane, Suite 600, Dallas, Texas 75231.  One Technologies, LP has done business as ScoreSense, One Technologies, Inc., and MyCreditHealth.  One Technologies, LP transacts or has transacted business in this district and throughout the United States.

13.      Defendant One Technologies Management, LLC is a Texas limited liability company with its principal place of business at 8144 Walnut Hill Lane, Suite 600, Dallas, Texas 75231.  One Technologies Management, LLC is the general partner of Defendant One Technologies, LP.

COMPLAINT

One Technologies Management, LLC transacts or has transacted business in this district and throughout the United States.

14.     Defendant One Technologies Capital, LLP is a Texas limited liability partnership with its principal place of business at 8144 Walnut Hill Lane, Suite 600, Dallas, Texas 75231.  One Technologies Capital, LLP is the limited partner of Defendant One Technologies, LP.  One Technologies Capital, LLP transacts or has transacted business in this district and throughout the United States.

## COMMERCE

15.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

16.     Since 2008, Defendants have used deceptive marketing tactics to enroll consumers in their credit monitoring program.

17.     On their websites, Defendants purport to offer consumers "free" online access to their credit scores, but fail to disclose, or fail to disclose adequately, that by accessing their score, consumers will be enrolled in Defendants' credit monitoring program and will incur a $29.95 recurring monthly fee until they call Defendants to cancel their membership.  Although some of Defendants' websites contain statements about the recurring charge, those statements are not conspicuous.  Accordingly, many consumers' overall net impression of Defendants' websites is that Defendants offer consumers "free" credit scores with no further payment obligation.

18.     Since 2008, Defendants have caused tens of millions of dollars in injury to consumers through the sale of their credit monitoring program.  At least 210,000 consumers have complained about Defendants' business practices, as described below, to their bank, their credit card company, a law enforcement agency, or the Better Business Bureau.

### Defendants' Products

19.     In 2008, Defendants launched MyCreditHealth, a product that monitors consumers' credit reports for fraudulent activity and provides access to their credit score.  In early 2010,

COMPLAINT                                                                    Page 4 of 16

1   Defendants launched ScoreSense, a product substantially similar to MyCreditHealth.  For the

2   purposes of this Complaint, "Defendants' credit monitoring program" means MyCreditHealth,

3   ScoreSense, and similar products offered by Defendants.

### Defendants' "Free" Credit Score Offer

4

5   20.     Defendants market their credit monitoring program through at least 50 websites,

6   including FreeScore360.com, FreeScoreOnline.com, and ScoreSense.com.

7   21.     Defendants attract consumers to their websites by offering "free" credit scores.  Financial

8   institutions use credit scores to determine whether to extend credit to a consumer.  Some

9   employers and property owners also use a consumer's credit score before transacting business

10   with the consumer.

11   22.     Defendants purchase keyword advertising on search engines, such as Google and Bing.

12   As a result, consumers who enter terms such as "free credit report" into the search engine often

13   see an ad for one or more of Defendants' websites near the top of the search results, in the

14   sponsored links or ads section.  (*See, e.g.*, Exhibit 1)  Defendants' most prominent online ad

15   states, "View your latest Credit Scores from All 3 Bureaus in 60 seconds for $0!"

16   23.     Defendants also entice consumers to their websites through email solicitations.  The

17   emails often inform consumers that "Your Complimentary Credit Scores Are Waiting For You."

18   (*See, e.g.*, Exhibit 2)

### Defendants' Sign-Up Process

19

20   24.     Consumers generally learn about Defendants' websites through Defendants' search

21   engine ads or through offers from third-party affiliate marketers, whom Defendants pay to direct

22   consumers to Defendants' websites.  All consumers who click on links in Defendants' ads or

23   their affiliate marketers' offers are directed to an online sign-up path controlled by Defendants.

24   25.     Landing Page:  The first webpage consumers see upon arrival at any of Defendants'

25   websites is the landing page ("Landing Page").  The focal point of the Landing Page is a blank

26   form, which in some instances is emphasized by large arrows, asking consumers to enter their

27   name, email address, and zip code.  A large, brightly colored button labeled "Get Yours Now,"

28   "View Your Free Scores Now," or similar language sits below or next to the blank entry fields.

COMPLAINT                                                                  Page 5 of 16

The webpage attached as Exhibit 3.a is materially similar to the Landing Page for FreeScore360 .com as it appeared to consumers in mid-2012. The webpage attached as Exhibit 3.b is materially similar to the Landing Page for FreeScoreOnline.com as it appeared to consumers in mid-2012. The webpages attached as Exhibit 4 are materially similar to the Landing Page for Defendants' websites, as they have appeared to consumers since late 2012.

26.    Address Form: Consumers who click the button on the Landing Page to access their free credit score are directed to a page that requests more personal information, including their name, address, and phone number ("Address Form"). A large, brightly colored button labeled "Submit & Continue" or similar language sits at the bottom of this page. The Address Form is materially similar to the webpage attached as Exhibit 5.

27.    Social Security Form: Consumers who complete the Address Form and click the large "Submit & Continue" button are directed to a webpage that requests the consumers' Social Security number and birthdate ("Social Security Form"). A large, brightly colored button labeled "Continue" or similar language sits at the bottom of the page. The Social Security Form is materially similar to the webpage attached as Exhibit 6.

28.    Verification Form: Consumers who complete the Social Security Form and click "Continue" are directed to a webpage that asks several questions based on information in the consumers' credit report to verify the consumers' identity ("Verification Form"). The Verification Form is materially similar to the webpage attached as Exhibit 7.

29.    After consumers verify their identity, a screen pops up, stating, "[W]e're processing your information and will be done shortly." The pop-up screen is materially similar to the webpage attached as Exhibit 8.

30.    Payment Form: After a few moments, the pop-up screen expands to feature a bar graph comparing the consumer's debt to an average consumer's debt ("Payment Form"). The screen also proclaims, "[Y]our credit scores are ready!", and directs consumers to enter credit or debit card information in the "Verification Information" section. Immediately above the credit card field is the following statement or similar language: "Tell us which card you would like to use for our $1.00 refundable processing fee." In numerous instances, consumers believed that

COMPLAINT                                                             Page 6 of 16

Defendants needed their debit or credit card information to verify their identity or to charge a $1 fee to process their credit score. A large, brightly colored button labeled "View Scores" or similar language sits near the bottom of the pop-up screen. The Payment Form is materially similar to the webpage attached as Exhibit 9.

31.     <u>Confirmation Page</u>: Consumers who complete the Payment Form and click "View Scores" are directed to a page that states, "Thank You – your order is complete," or similar language ("Confirmation Page"). This page displays the consumer's membership number for Defendants' credit monitoring program. Directly below the membership information sits a large, brightly colored "Continue" button. The Confirmation Page is materially similar to the webpage attached as Exhibit 10.

32.     <u>Credit Monitoring Homepage</u>: Consumers who click "Continue" are directed from the Confirmation Page to the home page of Defendants' credit monitoring program, which displays consumers' credit scores from various credit bureaus ("Home Page"). The Home Page also features general information about identity protection and credit pitfalls, in addition to a large button requesting to "Learn More" about Defendants' "Complete Monitoring Package." The Home Page is materially similar to the webpage attached as Exhibit 11.

33.     <u>Mobile Sign-Up</u>: Consumers who visit Defendants' websites on a mobile device experience a sign-up process similar to that described in Paragraphs 25 to 32, above. The Landing Page that consumers see on their mobile device is materially similar to the webpages attached as Exhibit 12.

34.     In numerous instances, consumers did not know they had been enrolled in Defendants' credit monitoring program until they discovered a $29.95 charge on their bank or credit card statement. Some consumers did not notice the recurring charge for several billing cycles. Many of these consumers are on tight budgets and could not afford the unexpected charges.

<div align="center">Defendants' Purported Disclosures</div>

35.     Defendants' websites have contained purported disclosures referring to the $29.95 recurring charge associated with Defendants' credit monitoring program. In late 2012, Defendants added a disclaimer in small text on a gray strip at the top of their Landing Page that

states, "Free 7-Day trial when you order your 3 Free Credit Scores.  Membership is then just $29.95 per month until you call to cancel."  (Exhibit 4)  However, due to the size and location of the text, many consumers do not see this disclaimer.  Other features, such as graphics, logos, forms, and large buttons, distract consumers from the inconspicuous disclosure.  In addition, consumers who interacted with Defendants' websites prior to late 2012 saw no disclosure on the Landing Page.  (Exhibit 3)

36.     On Defendants' websites, a second purported disclosure has appeared in a hyperlink on the Social Security Form, below the field where consumers enter their Social Security number and birthdate.  (Exhibit 6)  Sandwiched between the logos for security firms McAfee and VeriSign and the brightly colored "Continue" button, is small black text that typically states:

> By clicking on the 'Continue' button below, you agree to the <u>Offer Details</u>, to the <u>Terms and Conditions</u>, acknowledge receipt of our <u>Privacy Policy</u> and agree to its terms . . . .

The "Offer Details" link triggers a small pop-up window that reads:

> By submitting your secure order you will be immediately charged a $1 refundable processing fee, be eligible to receive your 3 Free Credit Scores, and begin your trial membership in ScoreSense credit monitoring.  At the end of the 7-day trial period, your credit/debit card will be charged $29.95 on a monthly basis until you call to cancel.  You can cancel by calling 1-800-972-7204.

The majority of consumers did not click on the Offer Details link, and thus failed to see this disclosure.  The Offer Details pop-up is materially similar to the pop-up window in Exhibit 13.

37.     On Defendants' websites, the last purported disclosure appears on the Payment Form. (Exhibit 9)  The Payment Form contains a graphic showing the consumer's debt, the payment field, security firm logos, and a large "View Scores" button.  The page also features a side panel that contains various information about credit scores and credit profiles.  The side panel contains a box titled "Offer Details" that describes Defendants' $29.95 per month continuity plan. However, many consumers did not see this disclosure.  The offer details box is in white font on a light gray background, a color combination that one of Defendants' employees noted "has been

COMPLAINT                                                            Page 8 of 16

known to cause seizures in lab rats." The offer details box is also in small print and on the right side of the page away from the credit card field. Consumers' eyes are not drawn to the gray side panel, but instead to the credit card field and large orange button below the credit card field that states, "View Scores."

38.     Until March 2013, consumers who used a mobile device to accept Defendants' free credit score offer were even less likely than desktop users to see Defendants' disclosures because the mobile sign-up path did not contain any disclosures about the recurring charge.

<div align="center">Defendants' Cancellation Policy</div>

39.     Consumers who want to stop recurring charges for Defendants' credit monitoring program must call Defendants' toll-free customer service number. Defendants do not permit consumers to cancel their membership online or via email.

40.     Many consumers have called Defendants' customer service number to cancel their membership and to request a refund. In numerous instances, consumers informed Defendants' agents that they were unaware that they had been enrolled in Defendants' credit monitoring program. Some consumers had to call Defendants' customer service department multiple times to cancel their membership in the program.

41.     In numerous instances, Defendants denied refunds to consumers who claimed they did not knowingly enroll in Defendants' credit monitoring program.

<div align="center">**VIOLATIONS OF THE FTC ACT**</div>

42.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

43.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

<div align="center">**Count 1**</div>

<div align="center">**Failure to Adequately Disclose Offer Terms**</div>

44.     Through the means described in Paragraphs 16 to 38, above, Defendants have represented, directly or indirectly, expressly or by implication, that consumers could obtain their credit score for free or for a $1 processing fee.

45.     In numerous instances in which Defendants have made the representation set forth in Paragraph 44, above, Defendants have failed to disclose, or failed to disclose adequately, to consumers the material terms and conditions related to the costs of the offer, including:

a.      That Defendants would automatically enroll consumers in a negative option continuity plan with additional charges;

b.      That consumers must affirmatively cancel the negative option continuity plan before the end of a trial period to avoid additional charges;

c.      That Defendants would use consumers' credit card information to charge consumers monthly for the negative option continuity plan;

d.      The costs associated with the negative option continuity plan; and

e.      The means consumers must use to cancel the negative option program to avoid additional charges.

46.     Defendants' failure to disclose or disclose adequately the material information described in Paragraph 45, above, in light of the representation described in Paragraph 44, above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**VIOLATIONS OF THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT**

47.     In 2010, Congress passed the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401 *et seq.*, which became effective on December 29, 2010.  Congress passed ROSCA because "[c]onsumer confidence is essential to the growth of online commerce.  To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business."  Section 2 of ROSCA, 15 U.S.C. § 8401.

48.     Section 4 of ROSCA, 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as that term is defined in the Commission's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.2(u), unless the seller (1) clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information, (2) obtains the consumer's

COMPLAINT                                                                                          Page 10 of 16

express informed consent before making the charge, and (3) provides a simple mechanism to stop recurring charges. *See* 15 U.S.C. § 8403.

49.     The TSR defines a negative option feature as: "in an offer or agreement to sell or provide any goods or services, a provision under which the consumer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer."  16 C.F.R. § 310.2(u).

50.     As described in Paragraphs 16 to 38, above, Defendants have advertised and sold Defendants' credit monitoring program to consumers through a negative option feature as defined by the TSR.  *See* 16 C.F.R. § 310.2(u).

51.     Pursuant to Section 5 of ROSCA, 15 U.S.C. § 8404, a violation of ROSCA is a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a.

## Count 2

### Failure to Disclose All Material Terms

52.     In numerous instances, Defendants have charged or attempted to charge consumers for Defendants' credit monitoring program through a negative option feature while failing to clearly and conspicuously disclose all material terms of the transaction before obtaining consumers' billing information.

53.     Defendants' acts or practices, as described in Paragraph 52, above, constitute a violation of Section 4(1) of ROSCA, 15 U.S.C. § 8403(1), and are therefore a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a.

## Count 3

### Failure to Obtain Consumers' Express Informed Consent

54.     In numerous instances, Defendants have charged or attempted to charge consumers for Defendants' credit monitoring program through a negative option feature while failing to obtain consumers' express informed consent before charging their credit card, debit card, bank account, or other financial account for Defendants' credit monitoring program.

///

///

COMPLAINT                                                                                   Page 11 of 16

55.    Defendants' acts or practices, as described in Paragraph 54, above, constitute a violation of Section 4(2) of ROSCA, 15 U.S.C. § 8403(2), and are therefore a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a.

### Count 4

### Failure to Provide a Simple Cancellation Method

56.    In numerous instances, Defendants have charged or attempted to charge consumers for Defendants' credit monitoring program through a negative option feature while failing to provide simple mechanisms for consumers to stop recurring charges from being placed on their credit card, debit card, bank account, or other financial account.

57.    Defendants' acts or practices, as described in Paragraph 56, above, constitute a violation of Section 4(3) of ROSCA, 15 U.S.C. § 8403(3), and are therefore a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a.

### VIOLATIONS OF ILLINOIS LAW

### Count 5

58.    Defendants have engaged in a course of trade or commerce which constitutes unfair and deceptive acts or practices declared unlawful under Section 2 of the Illinois Consumer Fraud Act, 815 ILCS § 505/2, in connection with marketing and selling free credit scores by:

a.    Failing to clearly and conspicuously disclose the material fact that consumers were being signed up for a 7-day free trial which would automatically bill consumers' credit cards until they cancelled by telephone;

b.    Unfairly assessing a monthly charge against consumers' credit cards without obtaining the express, informed consent of consumers to assess such charges;

c.    Representing expressly or by implication that Defendants offer free credit scores when, in fact, access to such credit scores cost consumers $1;

d.    Misrepresenting the purpose for obtaining a consumer's credit or debit card number; and

e.    Failing to honor consumer cancellation requests.

///

COMPLAINT                                                              Page 12 of 16

**VIOLATIONS OF OHIO LAW**

**Count 6**

59.     Defendants have engaged in unfair and deceptive acts and practices in violation of the Ohio Consumer Sales Practices Act, O.R.C. § 1345.02, the Exclusions and Limitations in Advertisements Rule, O.A.C. 109:4-3-02, the Use of Word 'Free' Etc. Rule, O.A.C. 109:4-3-04, and the Substantiation of Claims in Advertising Rule, O.A.C. 109:4-3-09, in connection with their solicitation and provision of credit monitoring services by:

      a.     Misrepresenting, directly or by implication, that consumers could obtain their credit score for free or for a $1 processing fee; and

      b.     Failing to disclose all material terms of the transaction, including:

            i.     The fact that Defendants would automatically enroll consumers in a negative option continuity plan that required consumers to affirmatively cancel to avoid additional charges;

            ii.     The fact that Defendants would use consumers' credit card information to charge them monthly for the negative option continuity plan;

            iii.     The costs associated with the negative option continuity plan; and

            iv.     The means consumers must use to cancel.

60.     Such acts and practices have been previously determined by Ohio courts to violate the Consumer Sales Practices Act, O.R.C. §§ 1345.01 *et seq.*  Defendants committed said violations after such decisions were available for public inspection pursuant to O.R.C. § 1345.05(A)(3).

**CONSUMER INJURY**

61.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, ROSCA, and the laws of the State of Illinois and the State of Ohio.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

///

///

COMPLAINT                                                                                      Page 13 of 16

1

## THIS COURT'S POWER TO GRANT RELIEF

2  62.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive

3  and such other relief as the Court may deem appropriate to halt and redress violations of any

4  provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction,

5  may award ancillary relief, including rescission or reformation of contracts, restitution, the

6  refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any

7  violation of any provision of law enforced by the FTC.

8  63.    Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 5 of ROSCA, 15 U.S.C. § 8404,

9  authorize this Court to enjoin Defendants' further violations of ROSCA.

10  64.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to allow Plaintiff

11  State of Illinois to enforce its state law claims against Defendants in this Court for violations of

12  the Illinois Consumer Fraud Act, 815 ILCS §§ 505/1 *et seq.*, and to grant such relief as provided

13  under state law, including injunctive relief, restitution, and such other relief to which the State of

14  Illinois may be entitled.  Section 7 of the Illinois Consumer Fraud Act, 815 ILCS § 505/7,

15  authorizes this Court to grant civil penalties, injunctions, and other relief the Court deems

16  appropriate.  Section 6 of ROSCA, 15 U.S.C. § 8405, also authorizes this Court to grant relief

17  the Court deems appropriate.

18  65.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to allow Plaintiff

19  State of Ohio to enforce its state law claims against Defendants in this Court for violations for

20  the Ohio Consumer Sales Practices Act, O.R.C. §§ 1345.01 *et seq.*, and to grant such relief as

21  provided under state law, including injunctive relief, declaratory judgment, restitution, civil

22  penalties, and such other relief to which the State of Ohio may be entitled.  Section 6 of ROSCA,

23  15 U.S.C. § 8405, also authorizes this Court to grant relief the Court deems appropriate.

24

## PRAYER FOR RELIEF

25        Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C.

26  §§ 53(b), 57b, Section 5 of ROSCA, 15 U.S.C. § 8404, and the Court's own equitable powers,

27  and Plaintiffs State of Illinois and State of Ohio, pursuant to Section 6 of ROSCA, 15 U.S.C.

28  § 8405, and applicable state law, request that the Court:

COMPLAINT                                                                                    Page 14 of 16

1       A.     Enter a permanent injunction to prevent future violations of the FTC Act, the

2    Illinois Consumer Fraud Act, the Ohio Consumer Sales Practices Act, and ROSCA by

3    Defendants;

4       B.     Award such relief as the Court finds necessary to redress injury to consumers

5    resulting from Defendants' violations of the FTC Act, the Illinois Consumer Fraud Act, the Ohio

6    Consumer Sales Practices Act, and ROSCA, including but not limited to rescission or

7    reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-

8    gotten monies; and

9    ///

10    ///

11    ///

12    ///

13    ///

14    ///

15    ///

16    ///

17    ///

18    ///

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

COMPLAINT

1   C. Award Plaintiffs the costs of bringing this action, as well as such other and

2 additional relief as the Court may determine to be just and proper.

3 Dated: **Nov. 12** , 2014

5 Respectfully submitted,

6 JONATHAN E. NUECHTERLEIN    LISA MADIGAN
  General Counsel         Attorney General

8 SARAH E. SCHROEDER      PAUL A. ISAAC
9 KENNETH H. ABBE       Attorney for Plaintiff
  EVAN ROSE         STATE OF ILLINOIS
10 YAN FANG
  Attorneys for Plaintiff
11 FEDERAL TRADE COMMISSION

13 MIKE DEWINE
  Attorney General

15 JEFFREY R. LOESER
  Attorney for Plaintiff
16 STATE OF OHIO

COMPLAINT                   Page 16 of 16

1        C.    Award Plaintiffs the costs of bringing this action, as well as such other and

2  additional relief as the Court may determine to be just and proper.

3  Dated: *Nov. 12*    , 2014

4

5  Respectfully submitted,

6  JONATHAN E. NUECHTERLEIN       LISA MADIGAN
    General Counsel                Attorney General

7

8  SARAH E. SCHROEDER           PAUL A. ISAAC
    KENNETH H. ABBE            Attorney for Plaintiff

9  EVAN ROSE                   STATE OF ILLINOIS
    YAN FANG

10  Attorneys for Plaintiff

11  FEDERAL TRADE COMMISSION

12

13  MIKE DEWINE
    Attorney General

14

15  JEFFREY R. LOESER

16  Attorney for Plaintiff
    STATE OF OHIO

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                                         Page 16 of 16



From: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
To: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Sent: Tue, Mar 12, 2013
Subject: ▓▓▓▓▓, Your Complimentary Credit Scores Are Waiting For You

**FreeScore360**
Powered By ScoreSense



# What's Your Credit Rating?

| 301-600 Poor |
| 600-700 Good |
| 700-849 Excellent |

## Get Your Free Credit Score
## From All 3 Bureaus Now!
When your Begin Free ScoreSense Trial

See your Rating Now

ScoreSense
4447 North Central Expressway, Suite 110 PMB 406
Dallas, Texas 75505
This email was sent to you because you requested we contave you about update and promotions, To unsubscribe, Click here



Complaint Exhibit 3.a



Complaint Exhibit 3.b

**FreeScoreOnline.com**
Powered by scoresense

Home | Member Login | Credit Tips | Sample Report | FAQ

# Get Your 3 FREE Credit Scores Plus Your 3-in-1 Credit Report for $1

With your 7-day ScoreSense® Trial

You Will Receive:

- TransUnion, Equifax, Experian Scores
- Daily Credit Monitoring and Alerts
- $1,000,000 ID Theft Insurance*

First Name

Last Name

Email

Zip Code

**Get Yours Now**

I am interested in receiving special offers from *ScoreSense* and partners.

Copyright © 2012 www.freescoreonline.com and ScoreSense®. All rights reserved.

Contact Us  Terms and Conditions  Privacy Policy

VeriSign Secured VERIFY

McAfee SECURE TESTED 23-FEB

Familiarizing yourself with the credit report process and ensuring that your credit report does not contain errors is crucial to strong financial security. The 3 national credit reporting agencies: Experian, Equifax and TransUnion - gather information for your credit report, update your credit report, and provide your credit report to landlords, businesses, and employers who need to assess your financial responsibility.

## Why Is It Important To View My Credit Report?

It is prudent to view your credit report on a frequent basis for fraudulent activity. If someone has accessed your Social Security number, very little additional information is required to commit

Free 7-Day trial when you order your 3 Free Credit Scores. Membership is then just $29.95 per month until you call to cancel.

 FreeScore360

TransUnion   EQUIFAX   Experian         Member Login

## Get Your Credit Scores From All 3 Bureaus



- TransUnion, Equifax, Experian Scores (View a Sample)
- Daily Credit Monitoring & Alerts
- New Credit Reports and Scores each month
- $1,000,000 ID Theft Insurance**

 McAfee SECURE™    Get Yours Now ▶     Norton SECURED

Checking your credit will NOT harm your score!

### Why do I need to check my Credit Score?



A good credit score is your passport to competitive interest rates for mortgages, cars, credit card offers, job offers, insurance premiums and more. A strong score is worth money because it saves you in excess costs.



POOR   FAIR   GOOD   GREAT

350-619   620-649   650-749   750-849
◄━ Credit Score Rating ━►

Credit FAQs

**CONTACT US   TERMS AND CONDITIONS   PRIVACY POLICY**

© 2014 One Technologies, L.P. All rights reserved.

ScoreSense ® is a trademark of One Technologies, L.P.

One Technologies, L.P. is the proud owner of this website, as well as *ScoreSense.com, FreeScoreOnline.com, FreeScore360.com, NationalCreditReport.com, CheckYourCredit.us, CreditReportCenter.us, CreditScoreCenter.us, CreditScoreOK.net, CreditScoreTracker.net, TripleScores.us, YourCreditScores.co, FS360.co*, for a complete list of our properties *click here*.

Identity Theft Insurance underwritten by insurance company subsidiaries or affiliates of American International Group, Inc. The description herein is a summary and intended for informational purposes only and does not include all terms, conditions and exclusions of the policies described. Please refer to the actual policies for terms, conditions, and exclusions of coverage. Coverage may not be available in all jurisdictions. Coverage is not available to residents of New York.

* Credit scores and ranking shown above are examples only.

** Identity theft insurance underwritten by subsidiaries or affiliates of American International Group, Inc. The description herein is a summary and intended for informational purposes only and does not include all the terms, conditions, and exclusions of coverage. Coverage may not be available in all jurisdictions. Download the PLAN SUMMARY for more details.

Complaint Exhibit 4.a









Complaint Exhibit 6



Complaint Exhibit 7



Complaint Exhibit 7









Android



Complaint Exhibit 12.a

IOS - Apple



Complaint Exhibit 12.b

