SARAH E. SCHROEDER, Calif. Bar No. 221528
KENNETH H. ABBE, Calif. Bar No. 172416
EVAN ROSE, Calif. Bar No. 253478
YAN FANG, Calif. Bar No. 279737
901 Market Street, Suite 570, San Francisco, CA 94103
415-848-5100 (T); 415-848-5184 (F); sschroeder@ftc.gov
Attorneys for Plaintiff FEDERAL TRADE COMMISSION

LISA MADIGAN, Attorney General
PAUL A. ISAAC, Ill. Bar No. 6300087
500 South Second Street, Springfield, IL 62706
217-782-4436 (T); 217-782-1097 (F); pisaac@atg.state.il.us
Attorney for Plaintiff STATE OF ILLINOIS

MIKE DEWINE, Attorney General
JEFFREY R. LOESER, Ohio Bar No. 0082144
30 E. Broad Street, 14th Floor, Columbus, OH 43215
614-728-1172 (T); 877-650-4712 (F); jeff.loeser@ohioattorneygeneral.gov
Attorney for Plaintiff STATE OF OHIO

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ILLINOIS, and STATE OF OHIO, <br> Plaintiffs, <br> v. <br> ONE TECHNOLOGIES, LP, a limited partnership, also d/b/a SCORESENSE, ONE TECHNOLOGIES, INC., and MYCREDITHEALTH, <br> ONE TECHNOLOGIES MANAGEMENT, LLC, a limited liability company, individually and as general partner of ONE TECHNOLOGIES, LP, and <br> ONE TECHNOLOGIES CAPITAL, LLP, a limited liability partnership, individually and as a limited partner of ONE TECHNOLOGIES, LP, <br> Defendants. | CASE NO. 3:14-CV-05066-JSC <br><br> [PROPOSED] **STIPULATED ORDER FOR PERMANENT INJUNCTION & MONETARY JUDGMENT** |

Plaintiffs, the Federal Trade Commission ("Commission" or "FTC"), the State of Illinois, and the State of Ohio, filed their Complaint for Permanent Injunction and Other Equitable Relief in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b, Sections 5 and 6 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. §§ 8404–05, the Ohio Consumer Sales Practices Act, O.R.C. §§ 1345.01 *et seq.*, and Section 7(a) of the Illinois Consumer Fraud and Deceptive Business

1  Practices Act ("Illinois Consumer Fraud Act"), 815 ILCS § 505/7(a).  Plaintiffs and Defendants
2  stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment
3  to resolve all matters in dispute in this action between them.
4        THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1. This Court has jurisdiction over this matter.
2. The Complaint charges that Defendants participated in deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C. § 8403, the Ohio Consumer Sales Practices Act, O.R.C. §§ 1345.01 *et seq.*, and Section 2 of the Illinois Consumer Fraud Act, 815 ILCS § 505/2, in the marketing of their credit monitoring programs.
3. Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.
4. Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.
5. Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. **"Advertisement"** means a commercial message in any medium that directly or indirectly promotes a consumer transaction.

B. **"Charge"** or **"charging"** means causing billing information to be submitted for payment, including against a consumer's credit card, debit card, bank account, phone bill, or other account, or otherwise attempting to collect money or other consideration.

///

///

C. **"Clear and conspicuous"** or **"clearly and conspicuously"** means as follows:

    1. In print communications, the disclosure shall be presented in a manner that stands out from the accompanying text so that it is sufficiently prominent, because of its type size, contrast, location, or other characteristics, for an ordinary consumer to notice, read, and comprehend it;

    2. In communications made through an electronic medium (such as television, video, radio, and interactive media such as the Internet, online services, and software), the disclosure shall be presented simultaneously in both the audio and visual portions of the communication. In any communication presented solely through visual or audio means, the disclosure shall be made through the same means through which the communication is presented. In any communication disseminated by means of an interactive electronic medium such as software, the Internet, or online services, the disclosure must be unavoidable. Any audio disclosure shall be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it. Any visual disclosure shall be presented in a manner that stands out in the context in which it is presented so that it is sufficiently prominent, due to its size and shade, contrast to the background against which it appears, the length of time it appears on the screen, and its location, for an ordinary consumer to notice, read, and comprehend it; and

    3. Regardless of the medium used to disseminate it, the disclosure shall be in understandable language and syntax. Nothing contrary to, inconsistent with, or in mitigation of the disclosure shall be used in any communication.

D. **"Defendants"** means One Technologies, LP, One Technologies Management, LLC, One Technologies Capital, LLP, and their successors and assigns, individually, collectively, or in any combination.

E. **"Material"** means likely to affect a person's choice of, or conduct regarding, goods or services.

F. **"Negative Option Feature"** means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take affirmative action to

reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer.

## I. PROHIBITION AGAINST MISREPRESENTATIONS

IT IS ORDERED that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or sale of any good or service with a Negative Option Feature, are permanently restrained and enjoined from misrepresenting, expressly or by implication, any material fact, including but not limited to:

    A.    The cost or price of a good or service;

    B.    That a good or service is free, a bonus, a gift, without cost, or without obligation;

    C.    That consumers can obtain a good or service for a minimal processing, service, or administrative fee with no further obligation;

    D.    The purpose for which a consumer's payment information will be used;

    E.    The timing or manner of any charge or bill (including but not limited to the date of the charge and whether it will be a credit card charge or checking account debit);

    F.    The length of any trial period before the consumer is charged or billed; or

    G.    That a transaction has been authorized by a consumer.

## II. REQUIRED DISCLOSURES

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or sale of any good or service with a Negative Option Feature, are permanently restrained and enjoined from:

    A.    Before a customer consents to pay for such good or service, failing to disclose, clearly and conspicuously:

        1.    The name of the seller or provider of the good or service or the name of the good or service as it appears in billing statements;

    2.  A description of the good or service, including but not limited to its duration;

    3.  The cost or price of the good or service;

    4.  The length of any trial period; and

    5.  The mechanism to stop any recurring charges.

  B.  For any transaction involving a sale of a service to a consumer, within 10 days after the date of the sale, failing to send the consumer written confirmation of the transaction, either by email or first class mail, clearly and conspicuously identified as such in the email subject line or on the outside of the envelope. Such written confirmation shall include clear and conspicuous disclosure of all the information required by Subsection A of this Section and of the procedures by which consumers can cancel or request a refund.

### III. EXPRESS INFORMED CONSENT

  IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or sale of any good or service with a Negative Option Feature, are permanently restrained and enjoined from using billing information to obtain payment from a consumer, unless, prior to using such billing information to obtain payment, Defendants obtain the express informed consent of the consumer. Express informed consent shall consist of:

  A.  For all written offers (including over the Internet or other web-based applications or services): a check box, signature space or line, or another substantially similar method by which consumers must affirmatively select to accept the Negative Option Feature. Immediately adjacent to an affirmative selection method, Defendants shall disclose the information identified in Subsection A of the Section entitled "Required Disclosures." This disclosure shall contain no additional information and shall be clear and conspicuous in relation to any other information provided on the page relating to costs, risks, or obligations associated with the Negative Option Feature, including any terms referring to "free," "trial," and "processing fee."

B. For all oral offers: the consumer's express, informed agreement to the Negative Option Feature, as evidenced by:

    1. The consumer's authorization of payment for the good or service described;

    2. The consumer's name and the date of the authorization;

    3. The consumer's understanding of what account will be charged; and

    4. The consumer's receipt of the disclosures required by this Order in Subsection A of the Section entitled "Required Disclosures."

Defendants shall maintain for each such transaction a voice recording of the entire transaction, including the sales representations. Each recording must be retrievable by the consumer's name, telephone number, or billing information and must be provided upon request to the consumer, the consumer's bank, or any law enforcement entity.

## IV. PROHIBITIONS CONCERNING REFUNDS & CANCELLATIONS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or sale of any good or service, are permanently restrained and enjoined from:

A. Misrepresenting, expressly or by implication, any material term of any refund or cancellation policy or practice;

B. Failing to disclose, clearly and conspicuously, before a consumer consents to pay for such good or service through a Negative Option Feature, all material terms, limitations, and conditions of any cancellation or refund policy, including but not limited to prohibitions against cancellations or refunds;

C. Failing to honor a cancellation or refund request that complies with any policy to make refunds or allow cancellations; and

D. Failing to provide and disclose, clearly and conspicuously, a simple mechanism for a consumer to immediately stop any recurring charge for such good or service. Such

mechanism must not be difficult, costly, confusing, or time consuming, and it must be at least as simple as the mechanism the consumer used to initiate the recurring charge.  For the purposes of this Subsection, a toll-free telephone call is a sufficiently simple cancellation mechanism so long as:

1. Defendants disclose, clearly and conspicuously, the toll-free telephone number on all websites and direct customer communications relating to the recurring charge and the underlying good or service;

2. Defendants include the toll-free telephone number in billing descriptors for the recurring charge;

3. Defendants maintain a call center that is open from 9:00 a.m. to 9:00 p.m. (Eastern Time) Monday through Friday, 9:00 a.m. to 6:00 p.m. (Eastern Time) Saturday, and 1:00 p.m. to 6:00 p.m. (Eastern Time) Sunday;

4. Defendants immediately accept a consumer's cancellation request, provided, however, that Defendants may then attempt to retain the consumer.  If at any time during the retention efforts the consumer expresses a desire that Defendants cease their retention efforts, Defendants shall immediately cease their retention efforts; and

5. The mechanism is not otherwise difficult, costly, confusing, or time consuming.

## V. PROHIBITION ON VIOLATING THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or sale of any good or service, are permanently restrained and enjoined from violating the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401–05, a copy of which is attached.

///

///

## VI. MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.   Judgment in the amount of twenty-two million dollars ($22,000,000) is entered in favor of Plaintiffs against Defendants, jointly and severally, as equitable monetary relief.  All money paid to Plaintiffs pursuant to this Order is compensatory and not punitive in nature.  Such money is not intended as nor shall it be treated or construed as a penalty or fine of any kind.

B.   Defendants are ordered to pay to Plaintiffs, by making payment to the Commission, twenty-two million dollars ($22,000,000).  Defendants stipulate that such funds will be held in escrow by a third party pursuant to a written escrow agreement, which provides for payment to Plaintiffs within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission, should this Order be entered by on or before the end of February 2015.

## VII. ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.   Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.   The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of any Plaintiff, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.   The facts alleged in the Complaint establish all elements necessary to sustain an action by any Plaintiff pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.   Defendants acknowledge that their Taxpayer Identification Numbers (Social Security numbers or Employer Identification Numbers), which Defendants must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

///

      E.     All money paid to Plaintiffs pursuant to this Order shall be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.

      F.     If a representative of the Commission, in consultation with the States of Illinois, Ohio, and Texas, decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, such funds shall be divided among Plaintiffs as follows: fifty-thousand dollars ($50,000) to the State of Illinois; fifty-thousand dollars ($50,000) to the State of Ohio Consumer Protection Enforcement Fund established by O.R.C 1345.51; and the remainder to the Commission.  The amount paid to the State of Illinois shall be deposited into the Attorney General Court Ordered and Voluntary Compliance Payment Projects Fund for subsequent expenditure as authorized by the Attorney General.  The Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any money not used for such equitable relief by the Commission shall be deposited to the United States Treasury as disgorgement.  Any funds paid to the State of Illinois or the State of Ohio not used for equitable relief may be used by the State to the full extent authorized by the State's laws, including but not limited to as payment for the State's costs of investigating and litigating the instant case.  Defendants have no right to challenge any actions any Plaintiff may take pursuant to this Subsection.

## VIII. CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or sale of any good or service, must provide sufficient customer information to enable any Plaintiff to efficiently administer consumer redress.  If a representative of any Plaintiff requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Plaintiff, within 14 days.

///

## IX. ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A. Each Defendant, within 7 days of entry of this Order, must submit to each Plaintiff an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For 5 years after entry of this Order, each Defendant must deliver a copy of this Order to:

    1. All principals, officers, directors, and LLC managers and members;

    2. All employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and

    3. Any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C. From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## X. COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to Plaintiffs:

A. One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury.  Each Defendant must:

    1. Identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of any Plaintiff may use to communicate with the Defendant;

    2. Identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

        3.      Describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant;

        4.      Describe in detail whether and how that Defendant is in compliance with each Section of this Order; and

        5.      Provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to all Plaintiffs.

B.      For 20 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

        1.      Any designated point of contact; or

        2.      The structure of any Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.      Each Defendant must submit to Plaintiffs notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.      Any submission to Plaintiffs required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" [and supplying the date, signatory's full name, title (if applicable), and signature].

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW,

Washington, DC 20580.  The subject line must begin:  FTC v. One Technologies, LP, matter number 1323021.

F.	All submissions to Plaintiff State of Illinois must be emailed to pisaac@atg.state.il.us or sent by overnight courier (not the U.S. Postal Service) to: Assistant Attorney General Paul Isaac, Illinois Attorney General's Office, 500 South Second Street, Springfield, IL 62706, (217) 782-4436 (P).  (Or other contact as provided to Defendants by the Illinois Attorney General's Office).

G.	All submissions to Plaintiff State of Ohio must be emailed to jeff.loeser@ohioattorneygeneral.gov or sent by overnight courier (not the U.S. Postal Service) to: Assistant Attorney General Jeffrey Loeser, Consumer Protection Section, Ohio Attorney General's Office, 30 East Broad Street, 14th Floor, Columbus, Ohio 43215.  (Or other contact as provided to Defendants by the Ohio Attorney General's Office).

## XI. RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years.  Specifically, Defendants, in connection with the sale of any good or service with a Negative Option Feature, must create and retain the following records:

A.	Accounting records showing the revenues from all goods or services sold;

B.	Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; address(es); telephone number(s); job title or position; dates of service; and (if applicable) the reason for termination;

C.	Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response; and

D.	All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to Plaintiffs.

## XII. COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

STIPULATED FINAL ORDER                                                                                   Page 12 of 15

A. Within 14 days of receipt of a written request from a representative of any Plaintiff, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. Any Plaintiff is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B. For matters concerning this Order, any Plaintiff is authorized to communicate directly with any Defendant. Defendants must permit representatives of any Plaintiff to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C. Plaintiffs may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XIII. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**


Dated: _____      _____
                                                                                        UNITED STATES DISTRICT JUDGE

1  SO STIPULATED AND AGREED:
2  FOR PLAINTIFFS:
3  JONATHAN E. NUECHTERLEIN
4  General Counsel

5  */s/ Sarah E. Schroeder*
6  SARAH E. SCHROEDER
   KENNETH H. ABBE
7  EVAN ROSE
   YAN FANG
8  Attorneys for Plaintiff
9  FEDERAL TRADE COMMISSION

10

11 LISA MADIGAN
   Attorney General
12 State of Illinois

13 */s/ Paul A. Isaac*
14
   PAUL A. ISAAC
15 Attorney for Plaintiff
   STATE OF ILLINOIS
16

17

18 MIKE DEWINE
   Attorney General
19 State of Ohio

20

21 _____
   JEFFREY R. LOESER
22 Attorney for Plaintiff
   STATE OF OHIO
23

24

25

26

27

28

SO STIPULATED AND AGREED:

FOR PLAINTIFFS:

JONATHAN E. NUECHTERLEIN
General Counsel

_____
SARAH E. SCHROEDER
KENNETH H. ABBE
EVAN ROSE
YAN FANG
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION


LISA MADIGAN
Attorney General
State of Illinois


_____
PAUL A. ISAAC
Attorney for Plaintiff
STATE OF ILLINOIS


MIKE DEWINE
Attorney General
State of Ohio

_____
JEFFREY R. LOESER
Attorney for Plaintiff
STATE OF OHIO

STIPULATED FINAL ORDER                                          Page 14 of 15

FOR DEFENDANTS:

*[signature]*

JEFFREY KNOWLES, ESQ.
ROGER COLAIZZI, ESQ.
AMY R. MUDGE, ESQ.
MATTHEW FARLEY, ESQ.
Venable LLP
575 7th St. NW
Washington, DC 20004
Telephone: 202-344-4860
Fax: 202-344-8300
Email: jknowles@venable.com
Attorneys for Defendants ONE TECHNOLOGIES, LP; ONE TECHNOLOGIES MANAGEMENT, LLC; ONE TECHNOLOGIES CAPITAL, LLP

**DEFENDANTS: One Technologies, LP; One Technologies Management, LLC; One Technologies Capital, LLP**

One Technologies, LP

By: _____[signature]_____

One Technologies Management, LLC

By: _____[signature]_____

One Technologies Management Capital, LLP

By: _____[signature]_____

S. 3386

# One Hundred Eleventh Congress
## of the
## United States of America

**AT THE SECOND SESSION**

*Begun and held at the City of Washington on Tuesday,
the fifth day of January, two thousand and ten*

# An Act

To protect consumers from certain aggressive sales tactics on the Internet.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Restore Online Shoppers' Confidence Act".

**SEC. 2. FINDINGS; DECLARATION OF POLICY.**

The Congress finds the following:
  (1) The Internet has become an important channel of commerce in the United States, accounting for billions of dollars in retail sales every year. Over half of all American adults have now either made an online purchase or an online travel reservation.
  (2) Consumer confidence is essential to the growth of online commerce. To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business.
  (3) An investigation by the Senate Committee on Commerce, Science, and Transportation found abundant evidence that the aggressive sales tactics many companies use against their online customers have undermined consumer confidence in the Internet and thereby harmed the American economy.
  (4) The Committee showed that, in exchange for "bounties" and other payments, hundreds of reputable online retailers and websites shared their customers' billing information, including credit card and debit card numbers, with third party sellers through a process known as "data pass". These third party sellers in turn used aggressive, misleading sales tactics to charge millions of American consumers for membership clubs the consumers did not want.
  (5) Third party sellers offered membership clubs to consumers as they were in the process of completing their initial transactions on hundreds of websites. These third party "post-transaction" offers were designed to make consumers think the offers were part of the initial purchase, rather than a new transaction with a new seller.
  (6) Third party sellers charged millions of consumers for membership clubs without ever obtaining consumers' billing information, including their credit or debit card information, directly from the consumers. Because third party sellers

S. 3386—2

acquired consumers' billing information from the initial merchant through "data pass", millions of consumers were unaware they had been enrolled in membership clubs.

(7) The use of a "data pass" process defied consumers' expectations that they could only be charged for a good or a service if they submitted their billing information, including their complete credit or debit card numbers.

(8) Third party sellers used a free trial period to enroll members, after which they periodically charged consumers until consumers affirmatively canceled the memberships. This use of "free-to-pay conversion" and "negative option" sales took advantage of consumers' expectations that they would have an opportunity to accept or reject the membership club offer at the end of the trial period.

**SEC. 3. PROHIBITIONS AGAINST CERTAIN UNFAIR AND DECEPTIVE INTERNET SALES PRACTICES.**

(a) REQUIREMENTS FOR CERTAIN INTERNET-BASED SALES.—It shall be unlawful for any post-transaction third party seller to charge or attempt to charge any consumer's credit card, debit card, bank account, or other financial account for any good or service sold in a transaction effected on the Internet, unless—

(1) before obtaining the consumer's billing information, the post-transaction third party seller has clearly and conspicuously disclosed to the consumer all material terms of the transaction, including—

(A) a description of the goods or services being offered;

(B) the fact that the post-transaction third party seller is not affiliated with the initial merchant, which may include disclosure of the name of the post-transaction third party in a manner that clearly differentiates the post-transaction third party seller from the initial merchant; and

(C) the cost of such goods or services; and

(2) the post-transaction third party seller has received the express informed consent for the charge from the consumer whose credit card, debit card, bank account, or other financial account will be charged by—

(A) obtaining from the consumer—

(i) the full account number of the account to be charged; and

(ii) the consumer's name and address and a means to contact the consumer; and

(B) requiring the consumer to perform an additional affirmative action, such as clicking on a confirmation button or checking a box that indicates the consumer's consent to be charged the amount disclosed.

(b) PROHIBITION ON DATA-PASS USED TO FACILITATE CERTAIN DECEPTIVE INTERNET SALES TRANSACTIONS.—It shall be unlawful for an initial merchant to disclose a credit card, debit card, bank account, or other financial account number, or to disclose other billing information that is used to charge a customer of the initial merchant, to any post-transaction third party seller for use in an Internet-based sale of any goods or services from that post-transaction third party seller.

S. 3386—3

(c) APPLICATION WITH OTHER LAW.—Nothing in this Act shall be construed to supersede, modify, or otherwise affect the requirements of the Electronic Funds Transfer Act (15 U.S.C. 1693 et seq.) or any regulation promulgated thereunder.

(d) DEFINITIONS.—In this section:

(1) INITIAL MERCHANT.—The term "initial merchant" means a person that has obtained a consumer's billing information directly from the consumer through an Internet transaction initiated by the consumer.

(2) POST-TRANSACTION THIRD PARTY SELLER.—The term "post-transaction third party seller" means a person that—

(A) sells, or offers for sale, any good or service on the Internet;

(B) solicits the purchase of such goods or services on the Internet through an initial merchant after the consumer has initiated a transaction with the initial merchant; and

(C) is not—

(i) the initial merchant;

(ii) a subsidiary or corporate affiliate of the initial merchant; or

(iii) a successor of an entity described in clause (i) or (ii).

**SEC. 4. NEGATIVE OPTION MARKETING ON THE INTERNET.**

It shall be unlawful for any person to charge or attempt to charge any consumer for any goods or services sold in a transaction effected on the Internet through a negative option feature (as defined in the Federal Trade Commission's Telemarketing Sales Rule in part 310 of title 16, Code of Federal Regulations), unless the person—

(1) provides text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information;

(2) obtains a consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction; and

(3) provides simple mechanisms for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account.

**SEC. 5. ENFORCEMENT BY FEDERAL TRADE COMMISSION.**

(a) IN GENERAL.—Violation of this Act or any regulation prescribed under this Act shall be treated as a violation of a rule under section 18 of the Federal Trade Commission Act (15 U.S.C. 57a) regarding unfair or deceptive acts or practices. The Federal Trade Commission shall enforce this Act in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the Federal Trade Commission Act (15 U.S.C. 41 et seq.) were incorporated into and made a part of this Act.

(b) PENALTIES.—Any person who violates this Act or any regulation prescribed under this Act shall be subject to the penalties and entitled to the privileges and immunities provided in the Federal Trade Commission Act as though all applicable terms and provisions of the Federal Trade Commission Act were incorporated in and made part of this Act.

S. 3386—4

(c) AUTHORITY PRESERVED.—Nothing in this section shall be construed to limit the authority of the Commission under any other provision of law.

**SEC. 6. ENFORCEMENT BY STATE ATTORNEYS GENERAL.**

(a) RIGHT OF ACTION.—Except as provided in subsection (e), the attorney general of a State, or other authorized State officer, alleging a violation of this Act or any regulation issued under this Act that affects or may affect such State or its residents may bring an action on behalf of the residents of the State in any United States district court for the district in which the defendant is found, resides, or transacts business, or wherever venue is proper under section 1391 of title 28, United States Code, to obtain appropriate injunctive relief.

(b) NOTICE TO COMMISSION REQUIRED.—A State shall provide prior written notice to the Federal Trade Commission of any civil action under subsection (a) together with a copy of its complaint, except that if it is not feasible for the State to provide such prior notice, the State shall provide such notice immediately upon instituting such action.

(c) INTERVENTION BY THE COMMISSION.—The Commission may intervene in such civil action and upon intervening—

(1) be heard on all matters arising in such civil action; and

(2) file petitions for appeal of a decision in such civil action.

(d) CONSTRUCTION.—Nothing in this section shall be construed—

(1) to prevent the attorney general of a State, or other authorized State officer, from exercising the powers conferred on the attorney general, or other authorized State officer, by the laws of such State; or

(2) to prohibit the attorney general of a State, or other authorized State officer, from proceeding in State or Federal court on the basis of an alleged violation of any civil or criminal statute of that State.

(e) LIMITATION.—No separate suit shall be brought under this section if, at the time the suit is brought, the same alleged violation is the subject of a pending action by the Federal Trade Commission or the United States under this Act.

*Speaker of the House of Representatives.*

*Vice President of the United States and*
*President of the Senate.*